IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LAUREN E. LEVY, by and through her parent and natural guardian, LUBA LEVY, Petitioner, | : : : : | CIVIL ACTION |
| v. | : : : | NO. 03-6202 |
| JO ANNE B. BARNHART, Commissioner of Social Security, Respondent. | : : : : | |

## MEMORANDUM

BUCKWALTER, S.J.                                                                                             July 29, 2005

    Presently before the Court is Plaintiff Lauren E. Levy's ("Levy" or "Plaintiff") Objections to the Report and Recommendation of Magistrate Judge Jacob P. Hart. For the reasons set forth below, Plaintiff's objections are overruled and the Magistrate Judge's Report and Recommendation is approved and adopted.

**I. DISCUSSION**

    After analyzing the reproduced record, the Administrative Law Judge's ("ALJ") opinion, the Magistrate Judge's Report and Recommendation, and Plaintiff's Objections, the Court finds that summary judgment is appropriately entered on behalf of Defendant.

    Even though the Court agrees with the Magistrate Judge's Report and Recommendation, the Court will briefly address Plaintiff's objections that Magistrate Judge Jacob P. Hart incorrectly concluded that: (1) Lauren Levy's disability did not reach or equal the marked level of inattention, impulsiveness, and hyperactivity necessary to meet the criteria in

Listing 112.11; (2) ALJ Strauss' analysis concerning Levy's school records is supported by substantial evidence; (3) ALJ Strauss' conclusion that Levy's limitation in the area of acquiring and using information is less than marked is supported by substantial evidence; (4) ALJ Strauss' conclusion that Levy's limitation in attending to and completing tasks is less than marked is supported by substantial evidence; and (5) ALJ Strauss' conclusion that Levy's limitation in the area of interacting and relating to others is less than marked is supported by substantial evidence.

Levy first argues that the Magistrate Judge erred in finding that substantial evidence supports ALJ Strauss' determination that Levy did not have the requisite level of inattention, impulsiveness, and hyperactivity necessary to meet the criteria of Listing 112.11. (Pl.'s Objections at 3). She contends that if ALJ Strauss had properly considered medical and documentary evidence that demonstrate the severity of Levy's ADHD, Levy would have been rendered disabled.

ALJ Strauss properly considered the Plaintiff's medical and documentary evidence in her opinion. (R. 49-58.) ALJ Strauss examined several evaluations, reports, and notes submitted by treating physicians and Levy's school, and she attached the documents to her opinion as Exhibits 1F through 10F. Among those documents was a report dated October 3, 2002, by Levy's treating psychiatrist Dr. Welda Donato-Duque, M.D., in which Dr. Donato-Duque found Plaintiff did not meet the criteria for ADHD. (R. 203, 259.) Dr. Donato-Duque also sent materials to Levy's school that, when completed by Levy's teachers, revealed that Levy is attentive and focused, and not impulsive or hyperactive. (R. 259.) For instance, on the Conners Teaching Questionnaire ("CTQ"), Levy's teachers rated Levy as "just little" in the areas of fidgeting, restless (overactive), excitable/impulsive, inattentive/distractable, daydreams,

disturbs other children, quarrelsome, and acts smart. (R. 198.) Levy was rated "not at all" in the areas of hums/makes odd noises, cries, mood changes quickly, and explosive/unpredictable behavior. Id.

On November 13, 2002, Dr. Donato-Duque changed Levy's diagnosis to "consider ADHD," citing Levy's mother complaints that Levy is disorganized and easily distracted. (R. 263.) However, Dr. Donato-Duque noted that none of the teachers had seen the same concern, and as previously discussed, the school records show that there was not a marked level of inattention, impulsiveness and hyperactivity.

Based on all the documentary and medical evidence presented to ALJ Strauss, the ALJ found that Levy's ADHD impairment did not reach or equal the marked level of inattention, impulsiveness and hyperactivity necessary to meet the criteria in Listing 112.11. In doing so, the ALJ acknowledged Dr. Donato-Duque's ADHD diagnosis, but weighed it against the school reports. After a careful review of the record, this Court finds that medical and documentary evidence supports ALJ Strauss' determination that although Levy suffers from ADHD, her disability does not reach or equal the marked level of inattention, impulsiveness and hyperactivity necessary to meet the criteria in Listing 112.11. Accordingly, the Court agrees with the Magistrate Judge's Report and Recommendation regarding this issue.

Levy also argues that the Magistrate Judge erred in concluding that ALJ Strauss' analysis concerning Levy's school records was supported by substantial evidence. (Pl.'s Objections at 1-2.) Levy contends that ALJ Strauss' decision was not supported by substantial evidence because of discrepancies in her school records, Comprehensive Evaluation Report ("CER"), and her teacher's evaluations. Levy compares the CER evaluation statements made by

the school district's evaluator against the Conners Teaching Questionnaire statements made by her school teachers.

In the CER evaluation, the school district's evaluator stated that Levy's overall reading composite is approximately half of her present grade placement.  The evaluator also observed that Levy lacks recall and has a great deal of difficulty in the reading comprehension subset.  (R. 173.)  On the Conners Teaching Questionnaire, however, Levy's teachers stated that Levy has no problem in the areas of sight vocabulary, reading and recalling details, number concepts, basic arithmetic, and oral expression.  Furthermore, Levy's teachers suggested that Levy has only slight problems with word attack skills, applied arithmetic problems, spelling, understanding spoken language, understanding and following directions, and remembering things she learns.  (R. 196.)

Although discrepancies exist–with regard to Levy's academic ability–between the CER evaluation and the CTQ statements, ALJ Strauss' analysis pursuant to Listing 112.11 is supported by substantial evidence.[1]  Under Listing 112.11, in order to meet the required level of severity for ADHD in a child in Plaintiff's age group, a plaintiff's impairment must reach a marked level of inattention, impulsiveness, and hyperactivity.  (Pl.'s Mot. Summ. J. at 7.)  In her analysis pursuant to Listing 112.11, ALJ Strauss was required to take into account Levy's behavior, not Levy's academic ability.  (R. 49-52.)  Accordingly, ALJ Strauss evaluated Levy's behavior by using evidence from the CTQ which, as previously discussed, indicated Levy is attentive and focused–and not impulsive or hyperactive.  Id.  While there may be some

---

1. These discrepancies may have arisen as a result of Levy's teachers lessened expectations of Levy's academic ability since her academic program is adapted in relation to expectations, amount of work, and test expectations.  (R. 174).

4

discrepancy with regard to Levy's academic ability, this Court does not find any reason to discredit the CTQ teacher's evaluation, as Levy provides no evidence to question or contradict the evaluation of her behavior. As such, the ALJ's analysis pursuant to Listing 112.11 is supported by substantial evidence, and the Court agrees with the Magistrate Judge's Report and Recommendation regarding this issue.

Levy further contends that the Magistrate Judge erred in finding that substantial evidence supports ALJ Strauss' conclusion concerning Levy's functional limitation in the areas of: (1) acquiring and using information; (2) attending to and completing tasks; and (3) interacting and relating to others. Levy maintains she has a "marked" level of impairment in all three domains.

Under the domain of acquiring and using information for school age children (age six (6) to age twelve (12)), ALJ Strauss properly concluded that there is a "moderate, but less than marked limitation" in Levy's ability to acquire and use information. (R. 54.) For example, on the Weschler Intelligence Scale for Children ("WISC-III"), Levy's Full Scale IQ score of 97 is in the average range. (R. 173.) Levy's nonverbal IQ score of 103 falls within the average range, while her verbal IQ score of 92 falls below the norm. Id. Levy's low score on the Kaufman Test of Educational Achievement is also consistent with her intellectual functioning, as her IQ falls at the lower end of the average range. Id. The tests revealed Levy had difficulty in the areas of reading comprehension, written expression, and mathematical skills. Id. Her computational skills and rote memory arithmetic functions were also weak. Id. Nonetheless, "areas measuring verbal judgment and reasoning in social situations, abstract thinking, as well as arithmetic ability are within an average range." Id. Even though there are weaknesses demonstrated by the WISC-

III and Kaufman Educational Achievement testing, they fall within the low average range of functioning.  (R. 54.)

According to Levy's 5th grade report card, Levy's academic performance adequate.  She receives "B's" and "C's".  (R. 54 & 149.)  Levy achieved "B's" in math and social studies and "C's" in reading and writing, with an adapted curriculum.  Id.  Lauren performed adequately in all other subjects, without an adapted curriculum.  Id.  Levy received "Satisfactory" marks in art, music, and health.  Her art teacher remarked that she used organizational skills, applied learned skills, and exerted her maximum effort.

Even though Levy has some weaknesses as a result of her learning disorder, a careful and thorough review of the record shows that she functions reasonably well in the academic environment with learning support.  Therefore, substantial evidence supports the ALJ's determination that Lauren's ability to acquire and use information is a moderate, but less than marked, limitation.

Under the domain of attending and completing tasks for school age children (age six (6) to age twelve (12), ALJ Strauss properly determined that there is a "mild limitation" in Levy's ability to attend and complete tasks.  For instance, school records indicate that Levy is able to pay attention, and for the most part, attends and completes tasks.  (R. 55.)  Her teacher indicates that Levy never daydreams and she focuses on her work.  Id.  Furthermore, Levy "completes her assignments and keeps up with the class pace with only minor adaptations." Id.  Levy was also rated as "average" in the areas of following directions, working independently, and moving easily from one task to another.  Id.  After thorough examination of the evidentiary record, this Court finds that there is virtually no evidence of any difficulties in concentration,

attention, staying on task, paying attention, or distractability. Thus, substantial evidence supports ALJ Strauss' finding that Levy's level of difficulty in attending and completing tasks is mild.

Under the domain of Levy's ability to interact and relate to others, substantial evidence supports ALJ Strauss' conclusion that Levy's ability to interact and relate to others is "no more than mildly limited by her impairments." (R. 56.) The school records state that Lauren is a very hard worker who does her best in school, and tries to satisfy her teacher's expectations. (R. 195.) Levy's teacher describes her as being "average" with regard to trusting adults, and rated her as "less than most" in the areas of trying to manipulate adults and avoiding closeness to adults. Id. Furthermore, on the CTQ, Levy's teacher rated her as "not at all" in the behavioral areas of serious/sad, sullen/sulky, change of mood, and temper outbursts. (R. 198.) Levy's teacher also noted that, considering her teaching experience of Levy's age group, Levy has a mild behavioral problem.

Levy herself testified before the ALJ, and stated on the record that she has friends and is able to get along with other children. (R. 82.) Lauren also indicated that although she is in a new school, she eats lunch with a friend. Id. Given the foregoing reasons, this Court thus find that the evidentiary record substantiates the ALJ's determination that Levy's level of difficulty in her ability to interact and relate with others is mild.

## II. REMAND ON THE BASIS OF ADDITIONAL MEDICAL EVIDENCE

Levy maintains that if the ALJ's decision is not reversed, the Court should remand the case to allow the Commissioner to consider the medical reports submitted to the Appeals Council. In order to get "sentence six remand" any new medical evidence must be material. See Szubak v. Secretary of Health and Human Services, 745 F.2d 831, 833 (3d Cir. 1984). The

materiality standard requires any new evidence to relate to the time period for which benefits were denied, and not to the subsequent deterioration of a condition previously held not to be disabling.  Ward v. Schweiker, 686 F.2d 762, 765 (9th Cir. 1982); (REPORT AND RECOMMENDATION at 8.)

   A "sentence six remand," however, is not appropriate in this case, as the medical evidence produced by Levy was created after December 16, 2002, when ALJ Strauss issued her decision.  The evidence thus concerns a time period after that for which benefits were denied, and cannot be considered by this Court.

**III.  CONCLUSION**

   For the reasons stated above, the Court approves and adopts the Magistrate Judge's Report and Recommendation.  An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LAUREN E. LEVY, by and through her parent and natural guardian, LUBA LEVY, | : : | CIVIL ACTION |
| Petitioner, | : : | |
| | : | NO. 03-6202 |
| v. | : : | |
| JO ANNE B. BARNHART, Commissioner of Social Security, | : : : | |
| Respondent. | : | |

**<u>ORDER</u>**

AND NOW, this 29th day of July, 2005, upon consideration of Plaintiff's Motion for Summary Judgment (Docket No. 8), Defendant's Cross-Motion for Summary Judgment (Docket No. 9), Plaintiff's Reply (Docket No. 10), the Report and Recommendation of United States Magistrate Judge Jacob P. Hart, Plaintiff's Objections thereto (Docket No. 13), and Defendant's Response to Plaintiff's Objections (Docket No. 15), it is hereby **ORDERED** that the Report and Recommendation is **APPROVED** and **ADOPTED**.  Judgment is entered on behalf of Defendant and against Plaintiff.  This case is now **CLOSED**.

BY THE COURT:

_____
RONALD L. BUCKWALTER, S.J.